UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DESIGN BASICS, LLC, PLAN PROS, INC., and PRIME DESIGNS INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-00726-TWP-DLP |
| KERSTIENS HOMES & DESIGNS, INC., T-KERSTIENS HOMES CORP., KERSTIENS REALTY, INC., KERSTIENS MANAGEMENT CORP., KERSTIENS LEASING CORP., KERSTIENS HOLDING CORP., and KERSTIENS DEVELOPMENT INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON PENDING MOTIONS**

This matter is before the Court on Motions for Summary Judgment filed by Defendants Kerstiens Management Corp., Kerstiens Leasing Corp., Kerstiens Holding Corp., and Kerstiens Development, Inc. (collectively, the "Management Defendants") (Filing No. 88), and Defendants Kerstiens Homes & Designs, Inc., and T-Kerstiens Homes Corp. (collectively, the "Home Defendants") (Filing No. 136).[1] Plaintiffs Design Basics, LLC ("Design Basics"), Plan Pros, Inc. ("Plan Pros"), and Prime Designs Inc. ("Prime Designs") (collectively, "Plaintiffs") filed this copyright infringement action alleging that Defendants have violated and continue to violate Plaintiffs' exclusive rights in certain architectural works and technical drawings depicting architectural works. The Management Defendants contend that they are entitled to summary judgment because Plaintiffs cannot demonstrate how they infringed upon Plaintiffs' copyrights in

---

[1] The Defendants assert that the seventh defendant, Kerstiens Realty, Inc., is not known to exist and has not appeared, and Plaintiffs do not respond to this assertion or argue otherwise.

certain architectural works, and they are not even in the business of creating house plans or building houses. The Home Defendants argue they are entitled to summary judgment because Plaintiffs cannot show that they had access to Plaintiffs' copyrighted works or that the Home Defendants' architectural plans are substantially similar to Plaintiffs' copyrighted materials, their architectural plans were independently created, and Plaintiffs have failed to establish that they own the registrations in the copyrighted works.

Also pending are several other motions: Motion for Oral Argument on Kerstiens' Motion for Summary Judgment ([Filing No. 149](#)), Renewed Motion to Require Plaintiffs to Post Bond for Costs and Expenses ([Filing No. 159](#)), Defendants' Objections to Expert Testimony That May Be Proffered by Plaintiffs ([Filing No. 176](#)), Plaintiffs' Motion to Exclude Expert Testimony and Request for Daubert Hearing ([Filing No. 196](#)), Plaintiffs' Motion in Limine Regarding Evidence not Provided By Defendants in Discovery ([Filing No. 197](#)), and Plaintiffs' General Motion in ([Filing No. 199](#)). For the following reasons, the Court **grants** the Home Defendants' Motion for Summary Judgment and **denies as moot** the Management Defendants' Motion for Summary Judgment, as well as the other pending motions.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Plaintiffs as the non-moving parties. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff Plan Pros, Inc. is in the business of designing homes through its single designer and draftsman, Carl Cuozzo. It has designed five new home plans since 2016 ([Filing No. 147-1 at 2](#)–3). Similarly, Plaintiff Prime Designs, Inc. designs home plans through a single designer, Marc

Behrens (Filing No. 147-7 at 2). Plan Pros and Prime Designs generate revenue by licensing home designs to builders through Plaintiff Design Basics and other plan brokers (Filing No. 147-1 at 3; Filing No. 147-7 at 2; Filing No. 147-9 at 4).

Plaintiff Design Basics is a residential design firm founded in Omaha, Nebraska, in the 1980s by Dennis Brozak. Design Basics creates custom and ready-made home plans for single and multi-family homes. It markets these home plans through plan catalogs, home building industry publications, brokerage marketing partners, client-specific publications, and the internet (Filing No. 147-9 at 3). Design Basics has designed thousands of home designs from scratch, including 350 new home plans since 2009. It licenses these home plans as complete sets of construction drawings that can be modified to meet the customer's design needs. Design Basics registers its designs with the United States Copyright Office before or near the time of publishing and marketing. *Id.*

Since 1990, Design Basics has published more than 180 home catalogs and other publications containing its home designs and has circulated more than 4.2 million copies of those publications to builders and other consumers across the country. Design Basics rented targeted lists from the National Association of Home Builders, which included the contact information of builder members of local home builders associations. Design Basics used these lists and other lists to compile mailing lists and then send its publications to potential customers across the country (Filing No. 147-20 at 3–4).

Since the early 2000s, Design Basics' home plans, plan catalogs, and other publications have been displayed at Carter Lumber and Menards locations across the country, which total 446 stores, including 28 stores in Indiana. Design Basics also has distributed its home plan publications as handouts at numerous home shows, conventions, and trade shows. *Id.* at 4–5. It has widely

3

disseminated its house plans on the internet on its own website as well as on the websites of leading plan broker companies. *Id.* at 5–9.

Design Basics has had success marketing and licensing its home designs to builders. It has more than 164,000 customers across the country who have purchased more than 135,000 licenses to build homes from plans marketed or designed by Design Basics. At its peak in the late 1990s and early 2000s, Design Basics was earning more than $4 million annually from licensing revenues ([Filing No. 147-9 at 3](#), 4, 9). Design Basics currently offers single-build licenses for any home design in its inventory of more than 2,800 plans for fees ranging from $700.00 to $6,000.00. Since 2009, it has issued 8,272 licenses for its home plans for a total of more than $6,000,000.00 in licensing revenue. More than 2,500 licenses have been sold in the last three years. Concerning the seven home designs at issue in this lawsuit, Design Basics has earned $25,000.00 in licensing revenue from selling 116 licenses since 2009. *Id.* at 3–4.

After Design Basics made its house plans readily available on the internet, it noticed a precipitous decline in house plan licensing revenue. At its peak, Design Basics' licensing revenue was above $4 million annually, but that dropped to less than $1 million annually after making its house plans widely available on the internet. Corresponding with the decline in licensing revenue was a precipitous decline in the number of licenses that builders and other customers purchased from Design Basics. *Id.* at 9–10.

Among the thousands of house plans that Design Basics licenses to builders and other customers are seven house plans that are at issue in this copyright infringement case. The seven house plans at issue are the 3098 Duncan, 3385 Brittany, 8096 Pine Ridge, 8026 Sun Ridge, Kirsten, Bloom, and Cartwright (collectively, "Copyrighted Works"). Design Basics created and owns the 3098 Duncan, 3385 Brittany, 8096 Pine Ridge, and 8026 Sun Ridge designs. Plaintiff

Plan Pros created and owns the Kirsten and Bloom designs. Plaintiff Prime Designs created and owns the Cartwright design. All of the house plans at issue in this case were created from scratch with the exception of the Kirsten plan, which was a derivative of Plan Pros' Leftwich design, and the Cartwright plan, which was a derivative of Prime Designs' Dekyan plan. The Leftwich and Dekyan plans were created from scratch ([Filing No. 147-1 at 4](#)–5; [Filing No. 147-7 at 3](#)–4; [Filing No. 147-9 at 8](#)–9).

Defendant Kerstiens Homes & Designs, Inc. is a construction company that has specialized in residential construction for nearly fifty years. It is based out of Jasper, Indiana ([Filing No. 147-36 at 2](#)–3). Defendant T-Kerstiens Homes Corp. was started around 1995 to do work in residential construction. It sometimes did business as Kerstiens Homes & Designs ([Filing No. 147-32 at 9](#), 11, 12, 93).

Defendant Kerstiens Holding Corp. does not engage in any business; rather, it is a holding company that owns stock of other companies. Defendant Kerstiens Management Corp. is in the business of renting properties that it owns. It has never built any houses or created any house plans. Defendant Kerstiens Leasing Corp. is in the business of leasing vehicles and equipment. Like Kerstiens Management, Kerstiens Leasing has never built any houses or created any house plans. Defendant Kerstiens Development, Inc. is in the business of purchasing land, subdividing the land into lots, and selling the lots. It also has never built any houses or created any house plans ([Filing No. 89-1 at 2](#)). The Kerstiens entities are owned and controlled by a combination of the same four individuals: Jerome and Doris Kerstiens and their two sons, Todd and Bart ([Filing No. 147-32 at 118](#)–19).

In June 2013, Design Basics' director of business development conducted market research in Indiana in an effort to develop more business. He researched the websites of home builders

throughout Indiana, which had previously been one of Design Basics' best-selling states. When he went to the website of Kerstiens Homes & Designs, he discovered what he believed to be infringing copies of the Copyrighted Works. He returned to the website again in July 2014 and found the same house plans that he believed infringed the Copyrighted Works ([Filing No. 147-26 at 3](#)–4).

Plaintiffs' Amended Complaint was filed on August 30, 2016 ([Filing No. 38](#)), which asserts claims of copyright infringement against the Management Defendants and the Home Defendants. Thereafter, the Management Defendants filed a summary judgment motion, asserting they are not in the business of creating house plans or building houses and did not infringe the Copyrighted Works ([Filing No. 88](#)). The Home Defendants also filed a summary judgment motion, asserting that Plaintiffs' evidence cannot support the elements of a copyright claim. They also assert that their house plans were independently created, and Plaintiffs have not shown they own the registrations in the Copyrighted Works ([Filing No. 136](#)).

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

The Home Defendants argue they are entitled to summary judgment based on a lack of access to the Copyrighted Works, and their house plans are not substantially similar to the Copyrighted Works. They also argue summary judgment is appropriate because their house plans were independently created, and Plaintiffs have not shown they own the registrations in the Copyrighted Works. The Management Defendants independently argue they are entitled to summary judgment because they do not create house plans or build houses, and thus, they did not infringe the Copyrighted Works.

7

### A. <u>Copyright Principles</u>

Under 17 U.S.C. § 102(a), "copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated." Copyright protection applies to several categories of works of authorship, including "architectural works." 17 U.S.C. § 102(a)(8). An "architectural work" is defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101. "The following structures, features, or works cannot be registered: . . . [s]tandard configurations of spaces, and individual standard features, such as windows, doors, and other staple building components." 37 C.F.R. § 202.11(d)(2).

"To establish copyright infringement, a plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017) (quoting *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007)). To own a copyright subject to copyright protection, the work must be original, meaning that it must be have been independently created and must have "a modicum of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 346 (1991). Ownership of a copyright registration constitutes *prima facie* evidence of ownership of a valid copyright. *See* 17 U.S.C. § 410(c).

Because "[t]he Copyright Act affords no protection against the independent creation of a work that happens to resemble some prior creation," a plaintiff alleging copyright infringement "must prove that the defendant actually copied its original work." *Lexington Homes*, 858 F.3d at 1099 (citing *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984)). While direct evidence of copying

8

is rare, proof of copying can be inferred by demonstrating that the defendant had "access" to the copyrighted work at issue and that the infringing work is "substantially similar" to the copyrighted work. *See id.* (quoting *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012)).

"The access requirement is not onerous. For example, a plaintiff may satisfy the requirement by showing that the copyrighted work was sent directly to the defendant or a close associate of the defendant," or "by showing that the copyrighted work was so widely disseminated that the defendant can be presumed to have seen or heard it." *Id.* at 1099–1100 (internal citations and quotation marks omitted). Once access has been established, a plaintiff must additionally demonstrate "substantial similarity" by pointing out the similarities between the copyrighted work and the allegedly infringing work. *Id.* at 1100 (citing *Peters*, 692 F.3d at 635). When determining whether substantial similarity exists to support a claim for copyright infringement, a court must "consider whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Id.* at 1101 (internal citation and quotation marks omitted). Although access cannot be used as a proxy for substantial similarity, "evidence of truly striking similarity may function as a proxy for access" in unusual situations. *Id.* at 1100 (citing *Selle*, 741 F.2d at 901; *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997)). The existence of a prior common source that could serve as an influence for both the plaintiff's and defendant's works "could undermine an inference of copying," especially "in crowded fields such as . . . designs for single-family homes." *Id.*

### B. The Home Defendants' Motion for Summary Judgment

Plaintiffs claim that the Home Defendants' architectural plans are nearly identical to their copyrighted designs and that the Home Defendants had sufficient access to Plaintiffs' designs

through print mailings and through home plan broker websites. The Home Defendants and Plaintiffs focus much of their argument on the issues of access and substantial similarity under the element of actual copying of an original work. Because the issue of substantial similarity is dispositive of the parties' dispute, the Court will not address access; instead, it will immediately address the issue of substantial similarity.

The Seventh Circuit Court of Appeals recently provided significant guidance regarding "substantial similarity" in copyright infringement cases involving architectural works in *Design Basics v. Lexington Homes*. That guidance is directly applicable to this case. In *Lexington Homes*, the Seventh Circuit explained that when courts "gauge substantial similarity," they are to consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Lexington Homes*, 858 F.3d at 1101 (citation and quotation marks omitted). The test is objective and viewed through the lens of an ordinary observer. *Id.*

"When considering substantial similarity, it is essential to focus on *protectable* expression. Similarity by itself—even close similarity—should not automatically spark an inference of unlawful copying." *Id.* (emphasis in original). "The challenge of proving substantial similarity is heightened where the field is crowded or where aesthetic choices may be secondary to consumer demands or functional requirements. The challenge is particularly acute in the market for affordable designs for single-family homes, where form follows function so closely." *Id.*

The Seventh Circuit further explained,

> [S]uburban homes [] share many design elements and characteristics to which no individual designer can lay claim. Design Basics' designs also share many attributes driven by consumer expectations and standard house design generally, and designers can get no credit for putting a closet in every bedroom, a fireplace in

10

the middle of an exterior wall, or kitchen counters against the kitchen walls. These features may appear similar across plans and models, but the term substantial similarity is properly reserved for similarity that exists between the *protected elements* of a work and another work. When an architect hews closely to existing convention, the architect's original contribution is slight—his copyright very thin, so that only very close copying could take whatever truly belongs to the architect.

*Id.* at 1102 (citations and quotation marks omitted) (emphasis in original).

In describing the consideration to be given the designated evidence, the Seventh Circuit noted,

> Design Basics argue[d] that . . . the district court improperly dissected the plans instead of considering their overall concept and feel. As Design Basics point[ed] out, we noted in *Atari, Inc. v. North American Philips Consumer Electronics Corp.* that the substantial similarity test does not involve analytic dissection and expert testimony, but depends on whether the accused work has captured the total concept and feel of the copyrighted work. But that is not all we said in *Atari*. We added: While dissection is generally disfavored, the ordinary observer test, in application, must take into account that the copyright laws preclude appropriation of *only those elements of the work that are protected by the copyright*. If the copied parts of a work are not, on their own, protectable expression, then there can be no claim for infringement.

*Id.* at 1105 (citations and quotation marks omitted) (emphasis in original). The court went on further to explain that "the district court would have erred if it had surveyed the plans from 30,000 feet, or even 500 feet. The court had to take a close look." *Id.*

In *Lexington Homes*, the Seventh Circuit took a close look at the evidence. It noted that "a close study of Design Basics' and Lexington's plans reveals many aesthetic distinctions," and mentioned the number of differences among the parties' house designs. *Lexington Homes*, 858 F.3d at 1103. The court further explained,

> [There are] spotted differences in dimensions and spatial relationships, in roofing configurations and building materials, and in carpentry and decor. Given the economic and functional constraints on the designers and the vast body of similar designs in the public domain, these many differences are not trivial. When floor plans are drawn in a customary style and to industry standards, even subtle differences can indicate that there is no copyright infringement.

*Id.* (citation, quotation marks, and footnote omitted).

The court of appeals concluded that the parties' house designs were not substantially similar, and "[t]o whatever extent the parties' plans resemble one another, they likewise resemble countless other home designs in a crowded market. For that reason alone, Lexington was entitled to judgment as a matter of law." *Id.* at 1105 (citation omitted).

With these principles in mind, and following the guidance and example provided by the Seventh Circuit Court of Appeals, the Court now turns to the parties' designated evidence and arguments.

To support their argument of copying and substantial similarity, Plaintiffs designate affidavits of their designers, owner, marketing and website manager, business development director, and administrative assistant ([Filing No. 164-1](Filing No. 164-1); [Filing No. 164-2](Filing No. 164-2); [Filing No. 164-3](Filing No. 164-3); [Filing No. 164-4](Filing No. 164-4); [Filing No. 164-5](Filing No. 164-5); [Filing No. 164-6](Filing No. 164-6)). These individuals provide testimony about their comparison of the Copyrighted Works and the Defendants' floor plans, as well as thousands of other floor plans. They point out the similarities that they found between the Copyrighted Works and the Defendants' floor plans that they could not find in the other floor plans that they reviewed. Plaintiffs also designate the floor plans of the Copyrighted Works and the Defendants' allegedly infringing floor plans ([Filing No. 147-23](Filing No. 147-23); [Filing No. 147-27](Filing No. 147-27)). Additionally, Plaintiffs have designated depictions and summaries of what they deem to be non-standard features in their house plans ([Filing No. 147-46](Filing No. 147-46)), and side-by-side and overlay comparisons of the floor plans ([Filing No. 147-5](Filing No. 147-5)). All of this evidence serves as an aid to the Court in comparing the Copyrighted Works and the Defendants' floor plans.

Plaintiffs highlight the similarities that they found in the Copyrighted Works and the Defendants' floor plans. These similarities include: the location of the T-shaped connecting wall

for the dining room, breakfast nook, and great room; the location of the door to the master suite at the top of the stairs; the location of the master suite on the second flood above the kitchen and laundry room; the location of the powder room between the foyer and the breakfast nook on the wall opposite the great room; the angled hall to the master bedroom, which creates an angled wall in the kitchen and creates a triangle shaped mechanical chase by the laundry room; the location of the kitchen between the laundry room and the screened porch; the location of the mechanical chase to the second floor; the location of the upstairs linen closet; and the L-shaped hall that wraps around the kitchen and leads to bedrooms and a bathroom (*see* [Filing No. 164-1 at 7](#)–9; [Filing No. 164-4 at 10](#)–11; [Filing No. 164-5 at 5](#)–15; [Filing No. 164-6 at 3](#)–4; [Filing No. 147-46](#)).

As noted above, the Seventh Circuit explained that "even subtle differences can indicate that there is no copyright infringement," and "many differences are not trivial." *Lexington Homes*, 858 F.3d at 1103. The Court's review of the Copyrighted Works and the Defendants' floor plans reveal numerous differences. These differences include the following examples.

### 1. Design Basics' "Duncan" v. Kerstiens' "704"

The size dimensions of the garage, porch, breakfast nook, dining room, living room, and three bedrooms are different between the two floor plans. The Duncan does not have a walk-through door into the garage from the outside, a utility closet in the garage, a linen closet next to the laundry room, a back patio, a linen closet in both upstairs bathrooms, or a second closet in the master bedroom, but each of these features are in the 704 floor plan. In the 704, the laundry room wall is not flush with the garage wall, and there is no window in the laundry room, but the opposite is true in the Duncan. The orientation and size of the powder rooms and laundry rooms are different. The Duncan has a coat closet in the foyer and a fireplace in the living room as well as a linen closet in the upstairs hallway, a desk in bedroom three, a walk-in closet in the master

13

bathroom, a whirlpool tub and window in the master bathroom, and a view that is "open to below" with a plant shelf in the foyer. However, none of these features appear in the 704 floor plan. The sizes of the master bedroom walk-in closet are different, and the door from the master bedroom to the master bathroom is in the middle of the wall (704) versus at the corner of the wall (Duncan) (*see* Filing No. 147-5 at 2).

2. **Design Basics' "Brittany" v. Kerstiens' "706"**

The size dimensions of the garage, foyer, breakfast nook, kitchen, living room, and four bedrooms are different between the two floor plans. The Brittany does not have a back patio off the breakfast nook, a linen closet in the breakfast nook, a linen closet in the upstairs bathroom, or a door that leads into attic space, but each of these features are in the 706 floor plan. In the 706, the laundry room has a utility space that makes the triangular mechanical chase smaller than in the Brittany. The outer garage wall is not flush with the master suite wall in the 706, but these walls are flush in the Brittany. The 706 garage has a side-entry garage door with small windows on the front wall; whereas the Brittany has a front-entry garage door. The walk-in closet in the master bedroom has an opposite orientation in the floor plans, and the powder rooms also have different orientations. The foyer and "open to below" area are larger and more square-shaped in the 706.

The Brittany has a fireplace in the living room, three transoms in the living room, three small windows in the master bedroom, a whirlpool tub and window in the master bathroom, a bay window in the breakfast nook, and two linen closets in the upstairs hallway. None of these features appear in the 706 floor plan (*see* Filing No. 147-5 at 3).

3. **Design Basics' "Brittany" v. Kerstiens' "706R"**

The differences found in the Brittany and the 706 are also found in the Brittany and the 706R. Additionally, the 706R has a different linen closet in the master bathroom and a walk-through door into the garage from the outside (*see* [Filing No. 147-5 at 4](#)).

### 4. **Design Basics' "Sun Ridge" v. Kerstiens' "713"**

The size dimensions of the garage, mudroom, porch, breakfast nook, dining room, living room, kitchen, and three bedrooms are different between the two floor plans. The Sun Ridge does not have a utility closet in the garage, a large L-shaped porch, a back patio, or a linen closet in the upstairs bathroom and master bathroom, but each of these features are in the 713 floor plan. The powder rooms are on opposite ends of the house plans and have different orientations. The Sun Ridge has a fireplace in the living room as well as a linen closest coming in from the garage and also by the master suite, but these are not features in the 713. The breakfast nook and screened porch extend back further in the Sun Ridge. The shape and size of the laundry rooms and the mechanical chases are different. The upstairs bathroom is closer to the top of the stairs in the 713. Additionally, there are single windows in the middle of the wall in bedrooms three and four in the 713; whereas these bedrooms have double windows right by the bathroom in the Sun Ridge. The 713 garage has a side-entry garage door with small windows on the front wall; whereas the Sun Ridge has a front-entry garage door (*see* [Filing No. 147-5 at 5](#)).

### 5. **Design Basics' "Sun Ridge" v. Kerstiens' "713B"**

The differences found in the Sun Ridge and the 713 are also found in the Sun Ridge and the 713B with the exception of the linen closest by the master suite and the location of the powder room. However, the shape and size of the powder rooms are still different (*see* [Filing No. 147-5 at 6](#)).

### 6. **Design Basics' "Pine Ridge" v. Kerstiens' "708"**

15

The size dimensions of the garage, mudroom, porch, breakfast nook, dining room, living room, kitchen, and two bedrooms are different between the two floor plans. The Pine Ridge does not have a utility closet in the garage, a walk-through door into the garage from the outside, a linen closet in the mudroom, a large L-shaped porch, a back patio, a linen closet in the master bathroom, a linen closet off the living room, a door that leads into attic space, or a space that is "open to below" by the stairs, but each of these features are in the 708 floor plan. The Pine Ridge has a fireplace in the living room, three transoms, a bay window in the breakfast nook, a window in the laundry room, and a coat closet in the foyer. None of these features appear in the 708 floor plan. The powder rooms are different shapes, sizes, and locations. The shape and size of the laundry rooms are different. The stairs going to the second floor are straight across from the opening to the master suite hallway in the Pine Ridge, but the stairs are across from a solid wall in the 708. The master bedroom is in the back of the house in the Pine Ridge but in the front of the house in the 708. The 708 garage has a side-entry garage door with small windows on the front wall, which is staggered; whereas the Pine Ridge has a front-entry garage door (*see* Filing No. 147-5 at 7).

### 7. **Design Basics' "Pine Ridge" v. Kerstiens' "708R"**

The differences found in the Pine Ridge and the 708 are also found in the Pine Ridge and the 708R with the exception that there is a coat closet in the foyer in both house plans, the master bedroom is in the back of the house in both house plans, the location and orientation of the powder room is the same, and there is no linen closet off the living room in either design (*see* Filing No. 147-5 at 8).

### 8. **Prime Designs' "Cartwright" v. Kerstiens' "614B"**

The size dimensions of the garage and dining room are different between the two floor plans. The Cartwright does not have a walk-through door into the garage from the outside, a back

16

patio, what appears to be a linen closet or mechanical chase in the bathroom, or an angled bathtub in the master bathroom, but each of these features are in the 614B floor plan. The Cartwright has a fireplace in the living room, a drop zone in the mudroom, two small windows in the master bedroom, a his and hers walk-in closet in the master bathroom, and side windows in the bedrooms. These features do not appear in the 614B floor plan. The orientation of the separate toilet in the master bathroom is different in the house plans. The shape and size of the laundry room is different in the designs. The linen closet between the two bedrooms is shorter in the 614B floor plan. Next to the foyer in the Cartwright is a "planning area" room, and in this location in the 614B are stairs that lead into what appears to be a basement (*see* [Filing No. 147-5 at 9](#)).

9. **Plan Pros' "Kirsten" v. Kerstiens' "521"**

The size dimensions of the garage, dining room, kitchen, and three bedrooms are different between the two floor plans. The Kirsten does not have a walk-through door into the garage from the outside, a back patio and sliding backdoor, or a linen closet in the master bathroom, but each of these features are in the 521 floor plan. The master bedroom is bigger in the 521, yet the window in the master bedroom is smaller. There is no window in the master bathroom in the 521, but there is a window in the Kirsten. The second and third bedrooms and the hallway linen closet are bigger in the 521. The wall separating the master bathroom walk-in closet and the opposite hallway is flush in the 521, but this same wall is staggered in the Kirsten. Next to the foyer in the 521 is an office, and in this same location in the Kirsten are stairs that lead into what appears to be a basement. The bottom of the living room is separated from the office by a solid wall in the 521; whereas in the Kirsten, the living room is not separated from the stairs by a solid wall (*see* [Filing No. 147-5 at 10](#)).

17

### 10. Plan Pros' "Bloom" v. Kerstiens' "617"

The size dimensions of the garage, foyer, breakfast nook, kitchen, living room, and four bedrooms are different between the two floor plans. The Bloom does not have a back patio off the breakfast nook, a bay window in the breakfast nook, a walk-through door into the garage from the outside, a utility closet in the garage, a powder room coming in from the garage, or a linen closet in the second bathroom, but each of these features are in the 617 floor plan. The Bloom has a fireplace in the living room, side windows in all the bedrooms and bathrooms, and a drop zone in the mudroom. None of these features appear in the 617 floor plan. The size, location, and orientation of the laundry rooms are different in each design. The size and location of the master bathroom linen closets are different. The master walk-in closet is in the bedroom in the 617 but in the bathroom in the Bloom. The foyer in the 617 is smaller, but it has a larger coat closet. The Bloom has a den with angled doors and a linen closet in the hall; whereas the 617 has a bedroom without an angled wall. The 617 garage has a side-entry garage door with small windows on the front wall; whereas the Bloom has a front-entry garage door. Additionally, the 617 has a straight hallway leading from the garage to the master bedroom. To get to the master bedroom from the garage in the Bloom, a person would have to go through the mudroom, foyer, living room, and nook (*see* Filing No. 147-5 at 11).

In light of the narrow window created by the Seventh Circuit's case law to support an architectural works infringement claim, the Court concludes that the numerous differences among the Copyrighted Works and the Defendants' house designs undermine the substantial similarity element of Plaintiffs' copyright claim. These numerous differences are not subtle or trivial. While some similarities exist among the floor plans,

> [the] accused plans resemble Design Basics' plans, but only because both sets resemble common home designs one might observe throughout the suburbs of

> Milwaukee, Chicago, Indianapolis, or many other communities. There are only so many ways to arrange a few bedrooms, a kitchen, some common areas, and an attached garage, so not every nook and cranny of an architectural floor plan enjoys copyright protection.

*Lexington Homes*, 858 F.3d at 1102–03 (citation and quotation marks omitted). "While it is possible to design a home that is a one-of-a-kind work of art, the home designs here do not fit that description." *Id.* at 1101. Because Plaintiffs do not have evidence to support the element of substantial similarity under Seventh Circuit case law, the Home Defendants are entitled to summary judgment on the copyright infringement claim.

C. **The Management Defendants' Motion for Summary Judgment**

The Management Defendants seek summary judgment asserting that none of the management companies have committed any infringing act, as none are in the business of creating house plans or building houses. They argue that they have been sued only because they have the word "Kerstiens" in their legal name. In response, Plaintiffs argue that the Management Defendants also are liable for the copyright infringement actions of the Home Defendants because the Home Defendants and Management Defendants companies are owned by the same four individuals and are so closely interrelated that they should be treated as a single entity. Accepting Plaintiff's theory, that the companies are so closely interrelated and should be treated as a single entity, the summary judgment of the Home Defendants' Motion makes the issues raised in the Management Defendants' Motion moot. Accordingly, the Court need not conduct further analysis on the Management Defendants' motion for summary judgment.

IV. **CONCLUSION**

For the reasons stated above, the Court **GRANTS** the Home Defendants' Motion for Summary Judgment ([Filing No. 136](Filing No. 136)). Because the resolution of the Home Defendants' Motion makes the issues raised in the Management Defendants' Motion moot, the Court **DENIES as moot**

the Management Defendants' Motion for Summary Judgment (Filing No. 88). The other pending motions have become moot because of the Court's resolution of the summary judgment motion in favor of the Defendants. Therefore, these other motions are also **DENIED as moot**: Motion for Oral Argument (Filing No. 149), Renewed Motion to Require Plaintiffs to Post Bond (Filing No. 159), Defendants' Objections to Expert Testimony That May Be Proffered by Plaintiffs (Filing No. 176), Plaintiffs' Motion to Exclude Expert Testimony and Request for Daubert Hearing (Filing No. 196), Plaintiffs' Motion in Limine Regarding Evidence not Provided By Defendants in Discovery (Filing No. 197), and Plaintiffs' General Motion in *Limine* (Filing No. 199).

Final judgment will issue under separate order.

**SO ORDERED.**

Date: 9/19/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

John A. Conway
LADUE CURRAN KUEHN LLC
jconway@lck-law.com

Mark F. Criniti
LADUE CURRAN KUEHN LLC
mcriniti@lck-law.com

Paul E. Harold
LADUE CURRAN & KUEHN
pharold@lck-law.com

John David LaDue
LADUE CURRAN & KUEHN LLC
jladue@lck-law.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES, LLC
poverhauser@overhauser.com

April M. Jay
OVERHAUSER LAW OFFICES, LLC
ajay@overhauser.com

Eric M. Wilkins
HUNT SUEDHOFF KALAMAROS
ewilkins@hsk-law.com

Sean Joseph Quinn
LADUE CURRAN KUEHN LLC
squinn@lck-law.com